FILED

MAR 9 1995

DAVID W. DANIEL, CLERK
U.S. DISTRICT COURT
E. DIST. NO. CAR

1          UNITED STATES DISTRICT COURT
2     EASTERN DISTRICT OF NORTH CAROLINA
3              RALEIGH DIVISION

4   UNITED STATES OF AMERICA,      )
                                   )
5              Plaintiff,          )
                                   )
6                                  )
               vs                  )   File No. 2:94-CR-15-9-BO2
7                                  )
                                   )
8   RODERICK BLACK,                )
                                   )
9              Defendant.          )

10

11

12              SENTENCING HEARING

13              DECEMBER 8, 1994

14         HONORABLE TERRENCE W. BOYLE

15

16   Appearances:

17   Ms. Christine B. Hamilton
     Assistant United States Attorney
18   310 New Bern Avenue, Suite 800
     Raleigh, NC   27601
19   (For the Plaintiff)

20   Mr. David Long
     POYNER & SPRUILL
21   Attorneys at Law
     3600 Glenwood Avenue
22   Raleigh, NC
     (For the Defendant)

23

24

25

FILED

AUG 1 4 1995

U.S. Court of Appeals
Fourth Circuit

FILED

APR 6 2001

U.S. Court of Appeals
Fourth Circuit

1    THE COURT:  United States versus Black.  Good
2    morning, Mr. Long.
3    MR. LONG:  Good morning, Your Honor.
4    THE COURT:  Mr. Bennett, the 42 that is in
5    paragraph 29, is that before the guideline change or is
6    that still the correct number?
7    MR. BENNETT:  Well, four levels are added to it.
8    That is with the change.  It would still be 42 because of
9    the offense.  Four additional levels are added.  I think
10   he was charged with continuing criminal enterprise.  That
11   calls for an additional four levels to be added to the
12   base offense level.
13   THE COURT:  The base offense level tops out at
14   38 regardless of the amount of cocaine?
15   MR. BENNETT:  That's correct.
16   THE COURT:  Then the enhancement on base offense
17   level results from a CCE conviction?
18   MR. BENNETT:  That's correct.
19   THE COURT:  Otherwise if there is just the
20   conspiracy, there is no way you get past the conspiracy,
21   conspiracy under the 38 law?
22   MR. BENNETT:  That's correct, Your Honor.
23   THE COURT:  Any objections to the report?
24   MR. LONG:  Your Honor, I set forth my objections
25   in the letter to the presentence officer and they are

1   addressed in the revised or the amended presentence

2   report, and I would carry those forward.

3         THE COURT: Well, the Court will deny the

4   objections and make a finding that the base offense level

5   is a 42 based on the relevant amount of cocaine, 49.4

6   kilograms of cocaine base and 16.62 kilograms of cocaine,

7   plus a conviction for continuing enterprise raises his

8   level by 4.

9         There is a 2 level increase for adjustment for

10   obstruction of justice and giving him a total offense

11   level of 44, but 43 is the highest measureable level, so

12   he is to be sentenced at level 43, category I, which is a

13   life imprisonment.

14         His guideline range for Counts 1 and 7 is life;

15   for Count 2 is life; for Count 3 is 60 months; Counts 21,

16   28, 32 through 35, 38 through 40, and 41 are 480 months.

17   He is not able to pay a fine or costs of incarceration.

18         Mr. Black, do you want to say anything about

19   your sentence? You are not required to, but you can if

20   you want to.

21         THE DEFENDANT: Yes, sir. I would like you to

22   know that I am not guilty of these charges they put on me.

23   At the time when I came to Mr. Simmons, I was in a very

24   bad accident from a motor bike and I asked him if I could

25   stay at his house, but at the time I came to his house, I

1    was under investigation with the police and after I found

2    out I left and went on joint time with the Court.

3         I told my lawyer to bring my doctor's papers and

4    prove the dates to show I was not in North Carolina and

5    the attorney didn't bring it to the Court to show I was

6    not in North Carolina, and what they were saying about Mr.

7    Black, the reason I parked my vehicle at Mr. Simmons',

8    they wanted to ask you for a ride and I told them I didn't

9    want to drive a vehicle.  No drugs transported to that

10   vehicle.  And they took it away for that vehicle.  That

11   vehicle was not transporting no drugs.

12        The only reason for me to come to Mr. Simmons'

13   was because of Mr. Simmons -- because I was injured.  My

14   arms, my pelvis, and my back part was broken up and I

15   asked him could I come to his house and stay, and

16   otherwise I was not going to his house and I didn't have

17   nothing to do with this.

18        I just got caught up at the investigation after

19   that time I left.  I never came back to the house.  I

20   don't see why I should be into this.

21        I am trying to explain everything to this.  I

22   don't know nothing about what these men was going on and

23   my vehicle was not used for no transporting of no drugs. I

24   don't see why they bring me to the case.

25        The only reason I am into the case, the time I

came they was under investigation and I left and I did not
came back to North Carolina until when they came and
arrested me.

You wanted -- the marshal told me I don't have
nothing to do with it, but people is mentioning my name in
the cases and that was how I got involved with this.

I have proof and dates to show I was not in
North Carolina and my lawyer subpoenaed my paper work for
the hospital where I was, but he did not bring it to no
Court and I don't know why because I was not into North
Carolina when those things was going on.

THE COURT: That was all a mistake; wasn't it?

THE DEFENDANT: It was a mistake. At the time I
came to North Carolina, they put me into the
investigation. I did not get arrested for no drugs. I
didn't get arrested for no sorting, no drugs, no firearms
or nothing. I don't see why they put these charges on me.

I am not guilty of any of these things. If I
was guilty of any of these charges, I would be in North
Carolina when they got arrested, too.

I do cab driving for a living and I sweep out
restaurants and wash parts. That's what I do for a
living.

The only bit of drugs I do is I smoke a little
bit of marijuana, Your Honor. I don't do nothing else. I

1    don't see why -- I don't even know these policemen.  I

2    don't know them and they don't know me and at the time

3    that I said, Your Honor, why I am into this is because I

4    was at this house while I was still under investigation

5    and that's why I am not involved in this.  I am not

6    involved in nothing with the charges that is on me.  I am

7    not involved, Your Honor.

8              THE COURT:  Okay.  Mr. Long?

9              MR. LONG:  Well, just to set the record

10   straight, his hospital records were admitted into evidence

11   in this case.  They are part of the record.

12             I guess he may be talking about something else,

13   but, you know, we did have the records and we did admit

14   the record into evidence.

15             THE DEFENDANT:  Plus the dates prove to show I

16   was not in North Carolina when these things were going on.

17   I was not in North Carolina, so I don't see why I am

18   involved into charges like this.

19             I didn't see those people after I leave from

20   North Carolina and I didn't see those people for like two

21   years.  I never see those people again and after that I

22   get arrested and they say I am into drug business see with

23   these people.

24             Mr. Simmons even has a son.  I don't even see my

25   son in it.  I don't see how I am -- how I am involved.  If

1    I was down there, I would have seen my kid or something.

2          Until this day, I still don't see my kid.

3          THE COURT:  Does the government want to say

4    anything?

5          MS. HAMILTON:  Well, Your Honor presided over

6    the trial in this case and heard witness after witness

7    describe in intimate detail Mr. Black's involvement and

8    with Wayne Simmons and running the continuing criminal

9    enterprise.

10          THE COURT:  I particularly recall the part about

11    him putting the gun in the person's mouth.  How did that

12    go?

13          MS. HAMILTON:  Yes, Your Honor.  That was in

14    response to an individual who had failed to pay a drug

15    debt and outside of the VIP Lounge of which we heard a

16    great deal of testimony about what happened in there,

17    including Mr. Black's involvement at the VIP Lounge, Mr.

18    Black designing the method for keeping the police out of

19    the crack house.

20          In fact, we played two spearate tapes in the

21    courtroom where Mr. Black was negotiating a drug deal and

22    the evidence in the case was overwhelming as to Mr.

23    Black's involvement in this continuing criminal

24    enterprise.

25          THE COURT:  All right.  This will be the

1     judgment of the Court on Counts 1 and 7.

2            THE DEFENDANT: Excuse me, Your Honor.

3            THE COURT: Yes, sir.

4            THE DEFENDANT: What she was saying about the

5     guns and people, I could not order a gun. On both arms, I

6     got pins in my arm. I have pins all over my body. This

7     arm was broken. They was both in plastic parts. I can't

8     order a gun on a man. I have got a walker. I cannot do

9     those things.

10            I don't see why they are saying these things

11     about me. All those statements they give against me is

12     false statements, Your Honor. And there ain't nothing

13     true about that.

14            THE COURT: Okay. Okay. Thank you. This will

15     be the judgment of the Court. On Counts 1 and 7, the

16     defendant is confined to the custody of the United States

17     Bureau of Prisons for the duration of his natural life.

18            On Count 2, the defendant is confined to the

19     custody of the United States Bureau of Prisons for his

20     life.

21            On Count 3, he is sentenced to 60 years

22     consecutive to the life sentences previously imposed.

23            On Counts 21, 28, 32 through 35, 38 through 40

24     and 41 he is sentenced to a term of 480 months concurrent

25     to the sentences imposed in Counts 1 and 7 and 2.

1          Sentencing on Count 3 is consecutive.

2          He is given terms of supervised release on

3     Counts 7, 2, 21, 28, 32 through 35, 38 through 40 and 41,

4     and three years Count 3. These are all concurrent. And

5     given special assessments of $700.

6          You were convicted by a jury and you are

7     entitled to appeal your conviction and sentence to the

8     United States Court of Appeals for the Fourth Circuit

9     within the times provided by the Rules of the Appellate

10    Procedure, and I so notify you in open court.

11          Mr. Bennett, you obviously want to tell me

12    something.

13          MR. BENNETT: On Count 3, that was 60 months.

14    You meant to say 60 months on Count 3 and it was 60 years.

15          THE COURT: I am sorry. Sixty months. Yes,

16    sir. Anything else? Okay. That will be the judgment of

17    the Court.

18          MR. LONG: If Your Honor please, may we give

19    oral notice of appeal at this time?

20          THE COURT: Yes, sir.

21          MR. LONG: I would like to file a motion to

22    withdraw as counsel for the appeal.

23          THE COURT: All right. I will consider and

24    allow that and at such time as that is entered, the Clerk

25    is directed to either notify the Court of Appeals for

1   appointment of substitute counsel or notify the public

2   defender's office for the assignment of substitute

3   counsel.

4           THE DEFENDANT:  I will get myself a lawyer for

5   my appeal, Your Honor.

6           THE COURT:  Okay.  Thank you.

7           (WHEREUPON, THE PROCEEDINGS WERE CONCLUDED.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              <u>CERTIFICATE</u>

3

4

5

6              This is to certify that the foregoing

7       transcript of proceedings taken in the United States

8       Distirct Court is a true and accurate transcription

9       of the proceedings taken by me in machine shorthand

10      and transcribed by computer under my supervision.

11

12              Dated this __9th__ day of _March_____, 1995.

13

14

15

16

17

18

19

20                      _Sharon K. Kroeger_____
                         Sharon K. Kroeger
21                       Court Reporter

22

23

24

25